### ROGERS et v CROMER et

Ohio Appeals, 2nd Dist, Miami Co

No 360.    Decided April 3, 1937

Kerr, Kerr & Kerr and Felzer, Troy, for Appellants.

Faust, Faust & Faust, Troy, for appellees.

## OPINION

By GEIGER, J.

On April 21, 1934, there was filed in the Court of Common Pleas, of Miami county, the petition of Delia M. Rogers et al, plaintiff, against Charles Cromer et al., defendants, in which the partition of certain real estate in said county was sought by plaintiffs, the petition setting up the various interests to which each of the original parties plaintiff and defendant were entitled, as claimed by plaintiffs.

On September 5, 1934, LuElla Banta and LaTaska Grace by leave of the Court, filed their answer, in which they asserted that the several interests set up in the petition were not correct, but were as set up in their cross-petition. They base their claim to a different distribution of the proceeds of said real estate, from that set up in the petition, upon the following allegations:

"These answering defendants say that they claim an interest in the premises in the petition described through George Cromer, who was a brother of Ida Shaffer Smith, and that George Cromer died without having been the father of any children and his wife is also dead, but during the lifetime of George Cromer he designated Minnie M. Frazee as an heir at law and said Minnie M. Frazee died leaving these two answering defendants as her only heirs.

"These answering defendants claim that by virtue of the designation of their mother as heir as provided under §10503-12, GC, they are entitled to an interest in the real estate in the petition described the same as though George Cromer had been the actual grandfather of these answering defendants."

The petition alleges that Ida Shaffer Smith died intestate on the 9th day of April, 1934.

The cross-petition does not show the date of the death of George Cromer or the date when he designated the mother of the cross-petitioners as his heir at law.

On September 28, 1934, a general demurrer to the answer of the cross-petitioners was filed, which was, on February 1, 1937, found to be well taken, and sustained, and the cross-petitioners not desiring to plead further, it was ordered that their cross-petition be dismissed, from which order they appeal.

We will briefly set up the provisions of several statutes which may be drawn into question.

Sec 10503-12, GC, provides that a person may appear before a probate court, and designate and appoint another to stand toward him in the relation of an heir-at-law, in the event of his or her death, and that the probate judge shall thereupon enter the fact upon his journal; "thenceforward the person thus designated will stand in the same relation, for all purposes, to such declarant as he or she could, if a child born in lawful wedlock. The rules of inheritance will be the same, between him and the relations by blood of the declarant, as if so born." This statute is substantially the same as the former statute 8598, and became effective January 1, 1932, before the death of the owner of the property.

Some of the decisions cited refer to the statute of designation, and some to the statute of adoption. In order that we may readily understand the several references we quote in part the adoption §10512-19:

"* * * and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock; provided, such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents; but shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs at law, or next of kin of the adopting parent or parents, or to a class including any of the foregoing, etc."

The adoption statute was formerly §8030, GC, which did not contain the present provision, permitting the inheritance of property expressly limited by the will. These new provisions found in the present statute, which was effective January 1, 1932, were probably inserted to clear up some of the uncertainties appearing in former decision, effecting the rights of the adopted child. There are some other changes in phraseology not of importance here.

The question before this court is whether or not the demurrer was properly sustained.

Statutes creating the right of inheritance of one designated as an heir and the provisions of the law of descent and distribution of intestate estates are in pari materia, and should, therefore, be construed as one law. Cochrel v Robinson, 113 Oh St, 526-533.

The petition does not disclose how Ida Shaffer Smith acquired her title, whether by inheritance or by purchase, but she died in 1934, before the effective date of §10503-4, the present statute of descent and distribution.

We must consider the case as being controlled so far as the descent and distribution of her estate is concerned by either former §§8573 or 8574, GC. §8573 provides that when a person dies intestate, having title to real estate coming to the intestate by descent, devise, or deed of gift from an ancestor, the same shall pass in parcenary to his or her kindred in the following course:

The decedent having died without children or their legal representatives, and without living parents, it is provided by §3, GC, that the estate shall pass to and vest in the brothers and sisters of the intestate who are of the blood of the ancestor from whom the estate came, or their legal representative, whether such brothers and sisters be of the whole or half blood of the intestate.

Sec 8574, GC, provides the order of descent when the estate came by purchase, and by the third paragraph it is provided that the estate shall pass to brothers and sisters of the intestate of the whole blood or their legal representatives. The only distinction as to descent between ancestral and non-ancestral property under the circumstances of this case, is that if it is ancestral it goes to brothers and sisters of the whole or half blood and if not it goes first to the brothers and sisters of the whole blood, and if there are no brothers and sisters of the whole blood it then goes to brothers and sisters of the half blood.

While not controlling the considerations effective at a time subsequent to the casting of the inheritance in the case at bar, we may consider the new sections effecting descent and distribution. §10503-1 provides that there shall be no difference between ancestral and non-ancestral property. §10503, being the statute of descent and distribution provides that when one dies intestate having title to any real estate, the estate shall pass under circumstances as disclosed in this case to the brothers and sisters, whether of the whole or half blood of the intestate, or their lineal descendants, per stirpes.

The case of Cochrel v Robinson, 113 Oh St, 526, involves the rights of a person designated as heir to an interest in the intestate property of the decedent. To the extent that it involves the declaration statute, and intestate property, it is similar to the case at bar, but is dissimilar in that it involves property coming from the declarant and not through declarent, as claimed in the case at bar.

We do not believe that a question as to whether the estate was ancestral or non-ancestral would have any bearing upon the solution of the question.

We will examine as briefly as possible the few decisions that might throw light upon the proper solution. We must keep in view the fact that the decisions relate to three classes of cases: 1, where a will is involved and interpreted; 2, effecting adopted children; 3, effecting those designated as heirs.

The property in question belonged to Ida Shaffer Smith, who was the sister of George Cromer, who designated Minnie M. Frazee as the one to stand in the same relation for all purposes to him as if she had been a child born in lawful wedlock.

Appellant relies on Cochrel v Robinson, 113 Oh St, 526. It is there held that the designation statute "Creates rights of inheritance under the statute of descent and distribution of intestate estates and such designated heir becomes entitled to the same rights of property as if he were the child born in lawful wedlock." "Such person so designated is to be regarded the same as 'issue' of the person so designating, insofar as it involves his right to inherit from the person so designating under the statute of descent and distribution."

It is held that where a person acquired title to real estate, and having designat-

ed an heir, afterwards dies intestate, seized of such property, the person so designated as heir inherits under the statute of descent as "if a child born in lawful, wedlock," and the person designating cannot be said to have died "without issue."

Briefly, the facts were as follows:

J. R. died childless and intestate, seized of certain real estate, leaving a daughter, Isabelle, who, prior to her death, designated Leroy Cochrel, to stand in relation of son and heir at law, for all purposes the same as if he had been born to her in lawful wedlock. Upon the death of Isabelle she was seized in fee simple of all the real estate owned by her husband at his decease. Upon her death the defendant in error, son of a deceased brother of J. R., began a proceeding in partition claiming for himself and others all the lands left by J. R. at his death, and which had passed to Isabelle, his daughter, and were held by her at the time of her death. Cochrel claimed all the lands as designated heir of Isabelle. The court stated that the paramount questions are:

1. What consideration shall be given to the word 'issue' when considered in connection with the designation statute, and

2. What effect should be given that portion of the latter section which provides the rules of inheritance will be the same between him and the relations by blood of the declarant, as if so born.

The statute of descent and distribution provides that when the relict of a deceased husband dies intestate and without issue, possessed of real estate, which came to the intestate from a former deceased husband, such estate shall vest in the children of such deceased husband, or their legal representatives, and if there are none, shall pass one-half to the brothers and sisters, etc.

The court says:

"Owing to the fact that the case at bar is one of statutory construction, the rule must prevail that where there is seeming conflict statutes must be construed together with the view of reconciling any apparent differences and sustaining both statutes if possible."

It is further stated that

"Statutes creating rights of inheritance between the parties to an adoption or the parties to a designation of an heir and the provisions of the law of descent and distribution of intestate estates are in pari materia and should therefore be construed together as one law."

The court holds that the widow Isabelle, who had designated Cochrel as her heir, did not die without issue, and that therefore the statute providing for the distribution of property where a relict dies without issue would not apply to the plaintiff.

The court quotes with approval, a Massachusetts case, where it is held that the intent of the statute is to place the adopted child in relation to either of his adopting parents, so far as their property is concerned, in the same position as if he was a natural child.

The court also quotes from a number of Ohio cases, which will be noted below.

It is held that the provision "the rules of inheritance shall be the same between him or her, and the relations by blood of the declarant as if so born" was but an attempt to emphasize the fact that the declarant heir was to be the same as a child born in lawful wedlock, and that if the declarant had children, or other blood relation, the designated heir was to be as one of them, and share equally with them.

We do not believe that this case holds that the designation of one as an heir establishes rights of inheritance in such person other than in the property of declarant.

In the case at bar, the declarant had no property.

The case of **Albright v Albright, 116 Oh St, 668**, involves the construction of a will, but, incidentally, Judge Allen, delivering the opinion, stated principles that may be of interest.

The case involved Item Six of the will of Charles Albright, who devised certain real estate to his son, Isaac, for life, and at his death to vest in fee simple in his children if he have any living. If he shall leave no children living at his death, then said land shall vest in his legal representatives of the Albright family. Isaac adopted Jesse, and Jesse claimed title to the real estate by virtue of his adoption. Judge Allen, delivering the opinion of the court, pointed out that the statute did not give to an adopted child the same rights of inheritance in the property of an ancestor of the adopting parents, as if he had been born to the adopted parents in lawful wedlock.

She quoted with approval the case of **Phillips v McConica, 59 Oh St, 1**, and stated that it is still the law.

. Judge Allen states that while the adopting statute created in Jesse broad rights of inheritance, from his relations to Isaac, it did not change the course of blood, and did not alter the relationship of Jesse to Charles, the testator. The judge states:

"Even under the provision of the statute, if the case were one of intestacy, Jesse Albright would be merely a stranger so far as Charles Albright's estate was concerned."

Judge Allen then declared:

"We have not to construe the statute but to construe the will, and to decide what the testator meant to accomplish therein."

It was held that in as much as the testator provided that after the death of Isaac, childless, the property should go to the legal representatives of the Albright blood; that by the will itself Jesse, who was not of the Albright blood, was excluded.

It is stated by Judge Allen:

"But never has a statute been enacted in this state making an adopted child a part of the family of the father or mother of the adopting father or mother. Granting that Jesse Albright was the legal representative of Isaac Albright, he was not 'the legal representative of the Albright family.'"

In the case of **Phillips, Extr. v McConica, 59 Oh St 1:**

"An adopted child is enabled by §3140, R.S., to inherit from its adopter, but not through him, from his ancestors."

The judge rendering the opinion, states on page 8, that the adopted child is entitled to all the rights of the adopted child, and states on page 9: "But this is far from providing that such adopted child shall be the issue of the adopter, and of his blood and of the blood of his ancestors." "The statute enables the adopted child to inherit from its adopter, but not through him." "The statute does not make the adopted child the heir of the ancestors of its adopter, and the right of the adopted child to inherit cannot be extended beyond where the statute has fixed it." "Adoption does not change the law of descent and

distribution as to the property of the ancestors of the adopter."

The case of **Smith v Hunter, 86 Oh St, 106,** referred to by Judge Allen, holds that:

"The rule that in the interpretation of a will the testator must be presumed to have meant what he said requires that a devise of a remainder 'to the heirs at law' of a beneficiary for life be regarded as including an adopted child of the beneficiary, although there was not, when the will was executed, any statute for the adoption of children."

This case involves the construction of a bill, and has no direct bearing upon the case at bar.

The case of **Kroff v Amrhein, 94 Oh St, 282,** holds that the paramount purpose of the statute is to make an adopted child the equal of a natural child to all legal intents and purposes, and to invest such adopted child with all the rights and privileges of a child of the blood.

This case is interesting principally because it follows the right to property, through the adopted child, but the property was, in the beginning, the property of the adopter, and the title passed through the adopted child.

The case of **Surman v Surman, 114 Oh St, 579,** referred to in the brief and the decisions holds that under the adopting section, an adopted child is entitled to the same rights as a child begotten in lawful wedlock, including the rights of the latter to have a will revoked under the provisions of §10561 GC.

In that case a husband and wife adopted a child after they had made a will; the wife died leaving her husband and the child surviving; no provision was made in the will for the adopted child; and after the probate of the will said adopted child brought an action asking that the will be set aside, for the reason that the will was revoked by reason of the adoption. The will was set aside for that reason.

In the case of **Quigley v Mitchell, 41 Oh St, 375:** John and Lusanna Cook adopted Mary Jane Paschal. Lusanna died without issue; afterwards her father, Daniel Mitchell, died intestate, seized of certain non-ancestral real estate; Mary Jane claimed the share of the said estate that would have descended to Lusanna, her foster mother, if Lusanna had survived her father, Daniel Mitchell. The Court of Common Pleas denied her claim, which was

affirmed by the District Court; the Supreme Court says this was right.

Sec 3140 R.S., as between the adopting parents and the adopted child, bestowed upon the latter all the rights and privileges of a child of the former begotten in lawful wedlock; but did not make the adopted child of Lusanna "of the blood of Lusanna's father." Her right to inherit is limited to "the property of such adopting parent."

The case of Laws v Davis, 34 O. A. R., 156, involves the construction of a will, and is interesting but not determinative of the case at bar.

Neither the statute providing for the designation of heirs or that for adoption contemplates giving an interest either to  the designated heir or to the adopted child, in the estate of any other person than that of the declarant, or of the adopting parent. If they acquire such an interest it must be by virtue of a will, and not by virtue of statute. The statute so far as the devolution of property is concerned, touches only the property of the declarant or of adopting parents; but that property may flow through the adopted child or the declared heir to others in the chain of title.

The statute of descent and distribution provides that the property of an intestate decedent goes to blood relatives, and unless such decedent has adopted a child or declared an heir, their property is controlled by the statute of descent and distribution.

After considering the facts involved in this case, as evidenced by the answer and cross-petition, to which a demurrer was filed, the statutes and the decisions, we are of the opinion the cross-petitioners, as the grand-daughters of George Cromer, who designated Minnie M. Frazee as his heir at law, and who was the mother of the cross-petitioners, do not inherit any of the property of Ida Shaffer Smith, the sister of the said George Cromer, who died intestate.

We are of the opinion that the court did not err in sustaining the demurrer, and the judgment is affirmed and cause remanded.

BARNES, PJ., and HORNBECK, J., concur.