Weygandt, C. J.
This action to determine heirship was instituted under favor of the provisions of Section 2129.18, Revised Code, which read as follows:
“Whenever property of a nonresident decedent as to whose estate ancillary proceedings are being had in Ohio passes by the laws of intestate succession or under a will to a beneficiary not named therein, proceedings may be had to determine the persons entitled to such property in the same manner as in the estates of resident decedents under Sections 2123.01 to 2123.07, inclusive, of the Revised Code. The ancillary administrator shall file a certified copy of such finding in the Probate Court in every county in Ohio in which real estate of the decedent is located. Such administrator shall procure and file in the court for the information of the court a certified copy of any determination of heirship relative to such decedent’s estate made in the state of the domiciliary administration.”
In conformity with the mandatory requirements of that section, the plaintiff ancillary administrator filed in the Court of Probate of Wayne County a certified copy, of a decree of the Circuit Court of Dade County, Florida, tinder date of December 30, 1958, holding that “George G. Limbeck was and is since July 29, 1950, the legitimate son of George W. Limbeck, deceased,” and that, “as such legitimate son, George G. Limbeck is the sole' and only heir at law of George W. Limbeck, deceased, and as such is' entitled to receive his entire estate, real, personal and mixed, wheresoever and. whatsoever .absolutely forever.”
The decree of the Florida court was rendered under favor of Section 731.29 of the Florida Statutes, Annotated, which reads in part as follows;
*299 “Every illegitimate child is an heir of his mother, and also the person who, in writing, signed in the presense of a competent witness, acknowledges himself to be the father. Sneh illegitimate child shall inherit from his mother and also, when so recognized, from his father in the same manner as if the child had been born in lawful wedlock.”
The Florida court also had before it certified copies of certain records from the Court of Probate of Wayne County, Ohio. One was an application filed in that court on July 13, 1950, by George G. Limbeck asking the correction of his birth record to show that his father was George W. Limbeck. Second were affidavits signed by George W. Limbeck and Lovina Wunder certifying that they were the father and mother, respectively, of George G. Limbeck. The third was a copy of the decree of the Court of Probate of Wayne County granting the application for the correction of the son’s birth record to show that George G. Limbeck is the son of George W. Limbeck.
Based on its own records, on the decree of the Florida court, and on the agreed statement of facts, the Court of Probate of Wayne County on February 13, 1960, rendered a decree reading in part as follows:
“(c) That the Circuit Court of the 11th Judicial Circuit sitting in chancery in case No. 58 C-11071-E by final decree found that George G. .Limbeck was and is, since July 29, 1950, the legitimate son of George W. Limbeck, deceased.
“(d) That George G. Limbeck as a legitimate son of the decedent, is the sole heir at law of George W. Limbeck, deceased, by judicial decree in the state of Florida. # *
“(a) That George G. Limbeck is the sole heir at law of George W. Limbeck, deceased, as to all Ohio property.
“It is therefore ordered that the estate of said decedent be distributed to George G.-Limbeck as the sole heir at law of said George W. Limbeck, decreased.”
The defendants contend that there has been no legitimation of the son, George G. Limbeck, in either Florida or Ohio, and that the son has no right to inherit real property in Ohio.
One of the authorities relied on by the Court of Appeals and the plaintiff but not mentioned in the brief of the defendants *300 is the unanimous decision of this court in the case of Barrett, Admr., v. Delmore, 143 Ohio St., 203, in which the first two paragraphs of the syllabus read:
“1. The status or condition of any person, with its inherent capacity of succession or inheritance, is to-be ascertained by the law of the domicile which created the status.
‘ ‘ 2. Generally, the status of adoption, created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given' by the latter state ■ to the status of adoption when created by its own law.”
The Court of Appeals commented:
“The same rules of law as above set forth, having to do with the status of adoption, apply equally to the status of legitimacy. 9 Ohio Jurisprudence (2d), Conflict of Laws, Sec. 94.”
And in 73 A. L. R., Annotated, 956 c, appears the following comment:
“As a general rule, where the ground for the acquisition of the status of legitimacy is an act other than the intermarriage of the parents, such as the act of the father in acknowledging the child as his own, the question whether such act will have the effect of legitimating the child will be determined by the law of the domicile of the father at the time of the performance of the act, to the exclusion of any other law.”
In 11 American Jurisprudence, 321, Section 22, the rule is summarized as follows:
“The better reasoning and the weight of authority establish, as a general principle of private international law, the proposition that the status of a person as legitimate or illegitimate, fixed by the proper law, is to be accepted in other jurisdictions for the purpose of descent of real property and the distribution of personal property.”
That this is the rule in Ohio is shown by the following quotation from 9 Ohio Jurisprudence (2d), 789, Section 94:
“While the status of legitimacy or adoption is controlled by the law of the domicile of the parties, the question of the effect of such status on the right to inherit land depends entirely upon the law of the situs of the land. However, the Ohio courts refer questions of status to inherit Ohio land to the law which *301 determined the status. Accordingly, adoption legally accomplished in another state places the child in the same situation in regard to inheritance of Ohio lands as though he had acquired such status in Ohio. * * *
“The Ohio courts seem to agree with those in most of the American jurisdictions, that the status of legitimacy conferred by the law of another state places the child in the same situation with regard to inheritance as though he were legitimate.”
The defendants rely on the decision of this court in the case of Blackwell, Gdn., v. Bowman, Exr., 150 Ohio St., 34. However, the wholly different question there involved was whether an individual who was both a designated heir and an illegitimate child could inherit through as well as from the declarant under an Ohio statute.
By way of further contrast, the instant case involves decrees of courts of two states. The two decrees were consistent inasmuch as they were predicated on the uncontradicted sworn statements of both parents that George G. Limbeck is their son. It seems to be a maximum of understatement to observe that no one could be in a position to speak with more authority on the subject than the parents themselves.
Hence, the lower courts were manifestly correct in holding that George G. Limbeck is the son and sole heir of George W. Limbeck and entitled to the entire estate of his father.

Judgment affirmed.

Zimmerman, Matthias, Bell, Radcliff and O’Neill, JJ., concur.
Radcliff, J., of the Fourth Appellate District, sitting by designation in the place and stead of Herbert, J.